The Honorable James C. Luker State Representative P.O. Box 216 Wynne, Arkansas 72396-0216
Dear Representative Luker:
This official Attorney General opinion is issued in response to your recent questions regarding the enforcement capabilities of regional solid waste management districts.
You have asked:
 (1) Can a regional solid waste management board, established under A.C.A. § 8-6-701 et seq., hire an environmental officer pursuant to the provisions of A.C.A. § 14-15-102 to enforce environmental regulations relating to open dumping or illegal dumping, including the provisions of A.C.A. § 8-6-401 et seq. and A.C.A. § 8-6-501 et seq.?
 (2) Do the enforcement powers that are granted under A.C.A. § 14-15-102
encompass the power to enforce only county ordinances, or do they encompass the power to enforce all environmental ordinances, regulations, and statutes?
 (3) Can a regional solid waste management board, established under A.C.A. § 8-6-701 et seq., employ an environmental officer under any statutory or regulatory authority to enforce environmental ordinances, regulations, or statutes relating to open dumping or illegal dumping within the confines of the district?
 (4) If a regional solid waste management board does have the authority to employ an environmental officer to enforce all environmental ordinances, regulations, or statutes, can any portion of the civil penalties, fines, and/or costs be allocated to and used by the district in employing such environmental officer, for administrative needs, or in the clean-up or remediation of the dump?
RESPONSE
Question 1 — Can a regional solid waste management board, establishedunder A.C.A. § 8-6-701 et seq., hire an environmental officer pursuant tothe provisions of A.C.A. § 14-15-102 to enforce environmental regulationsrelating to open dumping or illegal dumping, including the provisions ofA.C.A. § 8-6-401 et seq. and A.C.A. § 8-6-501 et seq.?
It is my opinion that a regional solid waste management district board is not empowered by the provisions of A.C.A. § 14-15-102 to hire an environmental enforcement officer.
I base this conclusion on the unambiguous language of A.C.A. §14-15-102. (The Arkansas Supreme Court has held that in interpreting statutory language, it is appropriate, in the absence of an ambiguity, to give the words of the statute their plain and commonly understood meanings. See, e.g., Ark. Dept. of Human Serv. v. Wilson, 323 Ark. 151,913 S.W.2d 783 (1996); Caplener v. Bluebonnet Mill. Co., 322 Ark. 751,911 S.W.2d 586 (1995).)
A.C.A. § 14-15-102 plainly states that "[e]ach county within this state may employ an environmental officer. . . ." (Emphasis added).
This statutory language (which is located in the chapters of the code governing counties) does not authorize any entity other than the county to employ an environmental officer. Moreover, there is nothing in the statutory scheme within which this provision is found that would indicate an intent to authorize any entity other than the county to employ such an officer.
For these reasons, I must conclude that A.C.A. § 14-15-102 does not authorize regional solid waste management district boards to employ environmental enforcement officers. (It should be noted, however, that I have opined in response to Question 3, infra, that solid waste management districts are authorized by A.C.A. § 8-6-704(b)(2) to employ persons whose duties are to investigate violations of environmental laws.)
Question 2 — Do the enforcement powers that are granted under A.C.A. §14-15-102 encompass the power to enforce only county ordinances, or dothey encompass the power to enforce all environmental ordinances,regulations, and statutes?
It is my opinion that the enforcement powers that are granted under A.C.A. § 14-15-102 encompass the power to enforce only county ordinances.
A.C.A. § 14-15-102 states in full:
 (a) Each county within this state may employ an environmental officer who shall inspect all landfills within that county, insure compliance with all environmental ordinances, collect evidence of noncompliance and present such evidence to the prosecuting attorney. This officer shall issue citations for violation of any county ordinance prohibiting dumping of waste, garbage, litter, or any hazardous materials throughout the county.
 (b) The environmental officer may complete the training course for law enforcement officers at the Law Enforcement Training Academy. After satisfactory completion of said course the environmental officer shall be a law enforcement officer.
 (c) After completing the training course at the Law Enforcement Training Academy, the environmental officer may carry firearms, execute and serve any warrant or other processes issued under the authority of the county pertaining to violations of county ordinances concerning environmental protection, and make arrests and issue citations for violations of county ordinances concerning environmental protection.
A.C.A. § 14-15-102.
Although the statute does not specifically state that the authority it grants is limited to the enforcement of county ordinances (nor is there any interpretive case law on the issue), a conclusion to this effect, in my opinion, can nevertheless be drawn from two aspects of the language used in the statute.
First, all references in the statute except one are specifically to "county" ordinances. This more specific phrase — "county ordinance" — is used in all provisions of the statute dealing with actual acts of enforcement. For example, the officer is empowered to issue warrants "for violations of any county ordinance prohibiting dumping of waste, garbage, litter, or any hazardous materials throughout the county." Similarly, the officer is authorized to execute and serve warrants or processes "pertaining to violations of county ordinances concerning environmental protection." Likewise, the officer may make arrests and issue citations "for violations of county ordinances concerning environmental protection." The only instance in which appears the more general reference to "ordinances," without the county designation, is the initial sentence of the statute, which appears to be a general overview of the more specific information that is to follow.
Second, the fact that the statute uses only the term "ordinance", and makes no reference to statutes or regulations, indicates an intent to limit the officer's authority to the enforcement of county ordinances. This indication is particularly apparent when a common-meaning interpretation is applied to the term "ordinance." The term "ordinance" is not commonly used to describe state laws, nor is it commonly applied to regulations.
For the foregoing reasons, I conclude that the enforcement authority that is granted in A.C.A. § 14-15-102 is limited to the power to enforce county ordinances only.
Question 3 — Can a regional solid waste management board, establishedunder A.C.A. § 8-6-701 et seq., employ an environmental officer under anystatutory or regulatory authority to enforce environmental ordinances,regulations, or statutes relating to open dumping or illegal dumpingwithin the confines of the district?
It is my opinion that a regional solid waste management board can employ a person whose duties are to investigate violations of environmental laws, but that it cannot grant the authority to enforce those laws.
Regional solid waste management boards are empowered by A.C.A. §8-6-704(b)(2) to "[e]mploy such engineers, architects, attorneys, real estate counselors, appraisers, financial advisors, and other consultants and employees as may be required in the judgment of the district. . . ." If, in the judgment of the board, an employee should be hired for the purpose of investigating violations of environmental laws, it would have the authority, under this statutory provision, to hire such a person. This course of action would clearly be consistent with the following duties of the board:
 (1) To collect data, study, and initially evaluate the solid waste management needs of all localities within their districts, as provided in § 8-6-716, and to publish their findings as a regional needs assessment;
 (2) To evaluate on a continuous basis the solid waste needs of their districts, and thereby update the regional needs assessments at least biennially;
 (3) To formulate recommendations to all local governments within their districts on solid waste management issues, and to formulate plans for providing adequate solid waste management[.]
A.C.A. § 8-6-704(a)(1)-(3).
A district's hiring of an employee for the purpose of investigating violations of environmental laws would also be consistent with the the authority that is granted to solid waste management districts in A.C.A. § 8-6-724, to "adopt more restrictive standards for the location, design, construction, and maintenance of solid waste disposal sites and facilities than the state or federal governments. . . ."
Nevertheless, the board is not empowered to grant law enforcement authority to any of its employees. Regional solid waste management districts do not themselves have law enforcement powers. See A.C.A. §8-6-704. Accordingly, they cannot delegate such powers to an employee.
Despite this limitation, it should be noted that the district, through its board or through any employee who possesses the required information, is empowered by A.C.A. § 8-6-504 to initiate an action for the enforcement of the illegal dumping laws. That statute states in full:
 (a) Any government official or employee or any person who has knowledge of, or information of, the illegal dumping of solid waste on any public or private property in this state may file a complaint thereof in the county court of the county in which the illegal dumping of solid waste has taken place or in the county of residence of the person who is accused of being liable for the illegal dumping of the solid waste.
 (b)(1) Upon the filing of a verified complaint, noting on the complaint the person against whom the claim is filed, the county court shall enter a temporary order directing that the accused person remove from the described public or private property the solid waste that has been illegally dumped on the property and properly dispose of the solid waste within ten (10) days from the date of the order.
(2) The sheriff of the county shall serve the order.
 (3) Upon the order being served, the accused party shall remove the solid waste in question from the public or private property as described in the order.
 (4) If the person wishes to challenge the order, the person may file a petition challenging the order with the court within ten (10) days from the date the order is served.
 (c)(1) Upon the filing of a petition challenging the order, the court shall hold a hearing on it within fourteen (14) days after the filing of the petition and shall serve notice upon the accusing party and upon the accused.
 (2) At the hearing, which may be continued from time to time as determined by the county court, the court shall hear all evidence and testimony and, after hearing it, shall enter an order either dismissing the original or temporary order or making the order permanent.
 (3) The parties represented at the hearing may be represented by counsel.
 (d)(1) If the order is made permanent, the accused party shall, within ten (10) days thereafter, cause the solid waste which has been illegally dumped on private or public property to be removed therefrom and disposed of properly.
 (2)(A) If, after ten (10) days from the date of the order, the person against whom the order is directed has not removed the solid waste from the public or private property and properly disposed of it as noted in the order, the governmental agency or the owner of the property may cause it to be moved and shall file with the county court a verified statement in writing of the cost of removal.
 (B) After reviewing the statement, if the court determines it to be reasonable, the court shall enter an order upon the judgment docket of the county court of the amount thereof, which shall be a judgment against the party against whom the judgment was issued and may be enforced as any other judgment.
 (e) Any party aggrieved by any order of the county court under this subchapter may appeal therefrom to the circuit court, and the circuit court shall try the cause de novo.
A.C.A. § 7-6-504.
Therefore, although the board does not have direct enforcement capabilities, it is not wholly without the power to see that the illegal dumping laws are enforced.
Question 4 — If a regional solid waste management board does have theauthority to employ an environmental officer to enforce all environmentalordinances, regulations, or statutes, can any portion of the civilpenalties, fines, and/or costs be allocated to and used by the district inemploying such environmental officer, for administrative needs, or in theclean-up or remediation of the dump?
Because I have opined that the board does not have the authority to employ an environmental enforcement officer, Question No. 4 is moot.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh